**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| DONALD R. FOSHEE, CAROLYN ) | |
| L. FOSHEE, MARILYN R. WILLIS, ) | |
| SYLVIA J. YEWELL, MERVIN D. ) | |
| YEWELL, LOIS L. YEWELL, ) | |
| ) | |
|     Plaintiffs, ) | |
| ) | |
| v. ) | No. 09-2674-JPM-dkv |
| ) | |
| FORETHOUGHT FEDERAL SAVINGS ) | |
| BANK, FORETHOUGHT LIFE ) | |
| INSURANCE COMPANY and ) | |
| COMMUNITY TRUST AND INVESTMENT ) | |
| COMPANY, ) | |
| ) | |
|     Defendants. ) | |

**ORDER DENYING DEFENDANTS FORETHOUGHT FEDERAL SAVINGS BANK AND
FORETHOUGHT LIFE INSURANCE COMPANY'S MOTION TO DISMISS**

Before the Court is Defendants Forethought Federal Savings Bank ("FFSB") and Forethought Life Insurance Company's ("FLIC") (collectively "Defendants") Motion to Dismiss (Docket Entry ("D.E.") 13), filed January 15, 2010. Plaintiffs Donald R. Foshee, Carolyn L. Foshee, Marilyn R. Willis, Sylvia J. Yewell, Mervin D. Yewell, and Lois L. Yewell ("Plaintiffs") responded in

opposition on February 15, 2010.[1]  (D.E. 18.)  With leave of
Court, Defendants filed a reply (D.E. 24) and a declaration of
Max Shelton (D.E. 26), Receiver of Forest Hill Funeral Home and
Memorial Park-East, in support of their reply, on March 2, 2010.
For the following reasons, the Court DENIES Defendants' motion
to dismiss.

I.    **BACKGROUND**

This case arises from Plaintiffs' purchase of pre-need
funeral and burial services contracts offered by Forest Hill
Funeral Home ("Forest Hill") and Tennessee Cemeteries, Inc.
(collectively "the Funeral Homes").  Under the terms of these
pre-need contracts, Plaintiffs pre-paid for funeral expenses in
return for the Funeral Homes' promise to provide funeral and
burial services or related merchandise at the time of the
respective contract purchaser's death.

The sale of pre-paid funeral benefits is regulated in
Tennessee pursuant to Tennessee Prepaid Funeral Benefits Act,
Tennessee Code Annotated § 62-5-401 et seq.  In pertinent part,

> [a]ny agreement, contract, or plan requiring the
> payment of money in advance . . . for funeral or
> burial services . . . or funeral or burial merchandise
> . . . is hereby declared to be against public policy

---

[1]   On April 20, 2010 Plaintiffs filed a First Amendment to Class Action
Complaint, removing previously-named Plaintiffs Mervin D. Yewell and Lois I.
Yewell because their deaths occurred prior to the filing
of the Complaint.  (D.E. 39 at 1.)  The allegations and claims asserted in
the Complaint are re-pled and incorporated by reference in the First
Amendment to Class Action Complaint.  (Id.)  References to the "Complaint" in
this Order are not affected by the amendment.

2

and void, unless all money paid there under shall be paid to and held by a bank or trust company.

Tenn. Code Ann. § 62-5-401 (1997). "Money deposited in accounts required by this chapter may be held and invested by the trustee in a common trust fund or investment so long as the trustee and the bank, trust company, or savings and loan association can at all times ascertain the amount due the beneficiary or beneficiaries of the funds." Id. § 62-5-402(b). Upon death, the Tennessee Prepaid Funeral Benefits Act requires the trustee to pay over the money deposited for the funeral services or merchandise, paying "any balance remaining in the fund after payment . . . to the purchaser or the purchaser's estate." Id. § 62-5-402(b)-(c).

In accordance with these provisions, the Funeral Homes executed a written Trust Agreement establishing trust funds for the administration of pre-need funeral services contracts. (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 1(a) ("Trust Agreement") (D.E. 13-1 at 1-14).) The Trust Agreement sets forth the Funeral Homes' desire to establish trust funds with a designated Trustee, in accordance with state law, to invest, manage, and disburse funds received as consideration for pre-need funeral services contracts. (Id. at 1.) In making investments, the Trustee is required to exercise the "judgment and care under the circumstances then prevailing which men of

3

prudence, discretion and intelligence exercise in the management of their own affairs . . . ."  (Id. at 2-3.)  The Trust Agreement requires the Trustee, among other duties, to:

- Maintain accurate and complete records;

- Identify the funds deposited with the Trustee by the name of the Contract Buyer and the name of the Contract Beneficiary, and the revocable or irrevocable nature of the Preneed Funeral Services Contract;

- If the trust account established is revocable, the Trustee shall return to the Contract Buyer, upon written demand of the Contract Buyer prior to the death of the Contract Beneficiary, all funds delivered to the Trustee plus any earnings or interest thereon;

- Maintain trust funds, including interest and earnings thereon, and shall keep such funds intact until complete performance of the funeral services or delivery of the merchandise specified in the Preneed Funeral Service Contract have been completed; and

- Release any remaining balance after payment to the Trustor, the Funeral Homes, for the funeral merchandise and services to either (1) the Contract Buyer or his estate, or (2) to the person designated by the Contract Buyer.

(See id. at 3-7.)

4

On December 4, 1997, the Funeral Homes designated Defendant
FFSB[2] as Trustee of the various pre-need funeral services
contract trust accounts.  (Defs.' Mem. in Supp. of Mot. to
Dismiss Ex. 1(b) ("Amendment to the Trust Agreement") (D.E. 13-1
at 15-17) at 1.)  Plaintiffs' Complaint alleges that in or about
1998, Defendant FFSB "used portions of the trust money to
purchase life insurance from its subsidiary, [Defendant]
Forethought [Life Insurance Company], upon the lives of the pre-
need contract holders."  (Compl. (D.E. 1) ¶ 34.)  Plaintiffs
allege that these purchases along with the payment of sales
commissions for these purchases were made without the consent or
knowledge of the pre-need contract holders.  (Id. ¶¶ 35-36.)
According to Plaintiffs, these actions "depleted the trust
monies."  (Id. ¶ 34.)

On December 7, 2004, the Funeral Homes substituted
Defendant Community Trust and Investment Company ("Community
Trust") as the Trustee for the pre-need funeral contract trust
accounts.  (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 2
("Successor Trustee Agreement between Forest Hill, Community
Trust, & FFSB") (D.E. 13-2) at 1.)  Plaintiffs allege that
thereafter Defendant Community Trust caused and Defendant FLIC
allowed the life insurance policies to be cash surrendered and

---

[2]     The Amendment to the Trust Agreement refers to Forethought National
TrustBank.  It is undisputed that Defendant FFSB is the successor to
Forethought National TrustBank. (See Amendment to the Trust Agreement at 1.)

imposed substantial surrender charges further depleting the
trust monies.  (Compl. ¶¶ 39-40.)  Plaintiffs claim that
Defendant Community Trust then "allowed the trust monies to be
withdrawn by one or more individuals, unnamed co-conspirators
who stole or otherwise absconded with the trust monies to the
detriment of the Plaintiffs and members of the class."  (Id. ¶
41.)

   According to a Verified Complaint filed by the State of
Tennessee in a factually-similar action involving different
parties, there was approximately $29.5 million in assets held in
trust, which included life insurance policies with a face value
of $22 million at the time Defendant FFSB was replaced as
Trustee by Defendant Community Trust.  (Defs.' Mem. in Supp. of
Mot. to Dismiss, Ex. 3(a)(4) (D.E. 13-3 at 28-49) ¶ 12.)  The
cash surrender of 13,465 life insurance policies resulted in a
loss of $9,547,082.00 in trust assets.  (Id. ¶ 14.)

   Plaintiffs assert eight causes of action against
Defendants: (1) breach of fiduciary duty, (2) negligence or
wantoness, (3) conversion, (4) concealment or fraud by
suppression, (5) civil conspiracy, (6) unjust enrichment, (7)
money had and received, and (8) violations of the Tennessee
Consumer Protection Act, Tennessee Code Annotated § 47-18-101 et
seq.  (Compl. ¶¶ 43-76.)  As a result of these alleged wrongs,
Plaintiffs claim that (1) there are insufficient trust monies to

provide for the funeral and burial services and merchandise as
contracted for by Plaintiffs, (2) the depletion of trust assets
has caused a loss of earnings that could have appreciated on the
assets, and (3) Plaintiffs have suffered mental anguish and
distress relating to the uncertainty surrounding their funeral
services.  (Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.'
Resp.") (D.E. 18) at 13-16.)

 The first half of Defendants' motion to dismiss pursuant to
Federal Rule of Civil Procedure 12(b)(1) contends that the Court
lacks subject matter jurisdiction to adjudicate Plaintiffs'
claims.  Defendants submit evidence, including a declaration
from Max Shelton ("the Shelton Declaration"), the Receiver for
Forest Hill, that Plaintiffs have not sought any funeral
services that have been denied and that Forest Hill has been
honoring all pre-need contracts since April 24, 2007.  Based on
this evidence, Defendants contend that Plaintiffs have not
sustained a concrete and particularized injury which establishes
constitutional standing or establishes that their claims are
ripe for judicial review.

 In the event that the Court finds that Plaintiffs have
established subject matter jurisdiction, Defendants also argue
pursuant to Rule 12(b)(6) that Plaintiffs have failed to state a
claim upon which relief can be granted because they have not

suffered any compensable damages.  Each argument will be addressed in turn.

## II.  <u>ANALYSIS</u>

### A. 12(b)(1) Motion

Because the determination that the Court lacks subject matter jurisdiction moots all other pending issues, courts are required to rule on Federal Rule of Civil Procedure 12(b)(1) motions before addressing motions brought pursuant to Rule 12(b)(6).  <u>Bell v. Hood</u>, 327 U.S. 678, 682 (1946) (motion to dismiss for failure to state a cause of action may be decided only after establishing subject matter jurisdiction, since determination of the validity of the claim is, in itself, an exercise of jurisdiction); <u>Moir v. Greater Cleveland Reg'l Transit Auth.</u>, 895 F.2d 266, 269 (6th Cir. 1990).  A Rule 12(b)(1) motion can make two separate challenges: (1) a facial challenge concerning only the complaint itself, and (2) a factual challenge which calls into question a plaintiff's alleged basis for subject matter jurisdiction.  <u>See</u> <u>Wright v. United States</u>, No. 95-5175, 1996 WL 172119, *4 (6th Cir. April 11, 1996).

In reviewing a facial attack, a trial court takes the allegations in the complaint as true, which is a similar safeguard employed under Rule 12(b)(6) motions to dismiss.  <u>Ohio Nat'l Life Ins. Co. v. United States</u>, 922 F.2d 320, 325 (6th

8

Cir. 1990).  In contrast, under a factual attack, as in this case, no presumption of truthfulness attaches to the allegations contained in the pleadings, and the district court is required to weigh the evidence presented to determine whether the factual basis for subject matter jurisdiction is present.  Id.; see also Ogle v. Church of God, 153 F. App'x 371, 375 (6th Cir. 2005). The court has wide discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts.  Ohio Nat'l Life Ins. Co., 922 F.2d at 325.

The court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case.  United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994).  The fact that the court takes evidence for the purpose of deciding the jurisdictional issue does not mean, however, that factual findings are therefore binding in future proceedings.  Id. ("The res judicata effect of a 12(b)(1) motion is . . . limited to the jurisdictional issue." (citation omitted)).  Moreover, the consideration of such evidence in connection with a Rule 12(b)(1) motion does not convert the motion into one for summary judgment even where the court holds a limited evidentiary hearing.  See Ohio Nat'l Life Ins. Co., 922 F.2d at 325.

On March 23, 2010, Plaintiffs filed a Motion to Strike Defendants' reply and the Shelton Declaration, contending that

both documents required the Court to consider evidence beyond
the scope of the pleadings in support of their Rule 12(b)
motion.  (D.E. 23.)  After no objections were filed, the Court
adopted the Magistrate Judge's Report and Recommendation
recommending that (1) Plaintiffs' Motion to Strike Defendants'
Reply and the Shelton Declaration be denied, (2) with the
exception of paragraph 9 of the Shelton Declaration, the Court
shall consider both documents in ruling on Defendants' motion to
dismiss for lack of subject matter jurisdiction, and (3) the
Court hold a limited evidentiary hearing on the issue of subject
matter jurisdiction only.  (D.E. 43 at 14-15.)  To ensure that
Defendants' motion to dismiss is not converted into a summary
judgment motion, the Court limits its review of Defendants'
reply and the Shelton Declaration to their relevance regarding
the Court's subject matter jurisdiction, not Defendants' Rule
12(b)(6) argument.

### i. Constitutional Standing

Article III of the United States Constitution limits the
jurisdiction of federal courts to actual "cases" and
"controversies."  U.S. Const. art. III, § 2; Allen v. Wright,
468 U.S. 737, 750 (1984).  To satisfy this "case-or-controversy"
requirement, a Plaintiff cannot litigate a case in federal court
without showing that he has (1) suffered an "injury in fact"
that is (2) fairly traceable to the defendant's allegedly

10

unlawful conduct, and that is (3) likely to be redressed by a favorable decision.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).  These three factors constitute "the irreducible constitutional minimum of standing," id., and are requisites for all actions, including class actions, see O'Shea v. Littleton, 414 U.S. 488, 494 (1974).

When alleging an injury in fact – the first element of constitutional standing – abstract injury is not enough.  O'Shea, 414 U.S. at 494.  The plaintiff must show that he has "suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical."  Am. Civil Liberties Union of Ohio, Inc. v. Taft, 385 F.3d 641, 645 (6th Cir. 2004) (citation and internal quotation marks omitted).  This injury-in-fact requirement must be met before a federal court may assume jurisdiction to ensure "a 'personal stake in the outcome' . . . to 'assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for the illumination of difficult [issues].'"  O'Shea, 414 U.S. at 493-94 (citations omitted).

Defendants argue that Plaintiffs have failed to establish that they suffered an actual or imminent injury because Plaintiffs, have not sought any services based on their pre-need funeral services contracts that have been denied. Alternatively,

Defendants contend that allegations of insufficient trust monies to honor Plaintiffs' contracts in the future are unsupported and speculative, and that such harm, even if true, has occurred only to the trust corpus, not to Plaintiffs directly.

Defendants' arguments, however, overlook the Trust Agreement provisions at issue, statutory provisions governing pre-need funeral contract services, and Tennessee trust law. Although Forest Hill through its Receiver may have honored all pre-need funeral services contracts since April 24, 2007 and intends to continue to do so, Plaintiffs have not asserted a breach of contract claim.  Plaintiffs, as pre-need funeral contract trust beneficiaries, are asserting claims arising out of the fiduciary duties assumed by the Trustee of the trust fund accounts.  The cognizable harm therefore is not the potential breach of the pre-need funeral service contracts, but the alleged mismanagement and resulting depletion of the trust corpus.  The depletion of the trust corpus and the loss of earnings which could have been derived constitute a concrete and particularized injury.

### 1. **Establishing Pre-need Funeral Trust Funds**

The parties do not dispute that the Funeral Homes established pre-need funeral trust funds with the money received from the sale of pre-need funeral services contracts.  The Trust Agreement sets forth that in compliance with the Tennessee

Funeral Benefits Act, which governs the qualifications and procedures for registration and regulatory requirements for the sale of prepaid funeral benefits in Tennessee, trust funds are to be established and managed by a designated Trustee. (See Trust Agreement at 2.)  The Trust Agreement expressly states that the Trustee shall invest the trust funds in accordance with Chapter 3 of the Tennessee Uniform Trust Code with listed exceptions, and shall exercise the "judgment and care under the circumstances then prevailing which men of prudence, discretion, and intelligence exercise in the management of their own affairs . . . ." (Trust Agreement at § 2 ¶¶ A & D.)

The Amendment to the Trust Agreement shows that on December 4, 1997, Defendant FFSB became the successor Trustee of the established trust fund accounts. (Amendment to the Trust Agreement at 1-2.)  Defendant FFSB remained the Trustee of these funds until December 7, 2004. (Successor Trustee Agreement between Forest Hill, Community Trust, & FFSB at 2.)  In addition, the parties do not dispute that Plaintiffs are pre-need funeral services contract beneficiaries.

## 2. **Trustee and Third Party Fiduciary Duties**

Plaintiffs' Complaint alleges that in or about 1998, Defendant FFSB "used portions of the trust money to purchase life insurance from its subsidiary, [Defendant] Forethought [Life Insurance Company], upon the lives of the pre-need

contract holders." (Compl. ¶ 34.) Plaintiffs allege that these purchases and their corresponding payments of sales commissions were made without the consent or knowledge of the pre-need contract holders and depleted the trust monies. (Id. ¶¶ 34-36.) Following the substitution of Defendant Community Trust as the Trustee for the pre-need trust funds in December 2004, Plaintiffs allege that Defendant Community Trust caused and Defendant FLIC allowed the life insurance policies to be cash surrendered and imposed substantial surrender charges. (Compl. ¶¶ 39-40.) According to the Verified Complaint filed by the State of Tennessee in a factually-similar proceeding, this cash surrender on 13,465 life insurance policies resulted in a loss of $9,547,082 in trust assets. (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 3(a)(4) (D.E. 13-3) ¶ 14.)

The Tennessee Uniform Trust Code, Tennessee Code Annotated § 35-15-101 et seq., governs the duties and powers of a trustee, relations among trustees, and the rights and interests for a beneficiary, except as otherwise provided in the terms of the trust, and provides Plaintiffs with standing and legal grounds to support their claims. Tenn. Code Ann. § 35-15-105(a). The Code "applies to express trusts, charitable or noncharitable, and trusts created pursuant to a statute, judgment, or decree

that requires the trust to be administered in the manner of an express trust."[3] Id. § 35-15-102.

Despite the fact that pre-need funeral trusts are express trusts, Defendants contend that Title 35 does not apply because these funds are governed only by "Title 62, Chapter 5 of the Tenn. Code Ann. and Chapter 0780-5-10 of the Rules of the Tennessee Department of Commerce and Insurance," and "the more specific regulatory scheme trumps a more general law." (Defs.' Reply (D.E. 24) at 7-8.)  The Court rejects this argument because the basic principles of statutory construction dictate that general and special acts relating to the same subject matter are in pari materia and should be construed together. Erlenbaugh v. United States, 409 U.S. 239, 243 (1972).

> Where one statute deals with a subject in general terms, and another deals with a part of the same subject in a more detailed way, the two should be harmonized if possible; but if there is any conflict, the latter will prevail, regardless of whether it was passed prior to the general statute, unless it appears that the legislature intended to make the general act controlling.  Where the special statute is later it will be regarded as an exception to or qualification of the prior general one . . . .

N.A.A.C.P., Detroit Branch v. Detroit Police Officers Ass'n, 900 F.2d 903, 912 (6th Cir. 1990) (citing Sutherland Statutory

---

[3]    An express trust is created if (1) the settlor has capacity to create a trust, (2) the settlor indicates an intention to create the trust, (3) the trust has a definite beneficiary, (4) the trustee has duties to perform, and (5) the same person is not the sole trustee and sole beneficiary.  Tenn. Code. Ann. § 35-15-402.  The facts of this case indicate that an express trust was formed upon the execution of the Trust Agreement and the transfer of the pre-need funeral services contract deposits from the Funeral Homes to the designated Trustee for the benefit of the pre-need contract purchasers.

Construction § 51.05, at 499-500 (N. Singer ed. 1984) (footnotes omitted)).

Although Tennessee's Prepaid Funeral Benefits Act pre-dates the Tennessee Uniform Trust Code, the provisions in dispute within the two statutes relate to trusts, and to the extent possible, must be read together.[4]  The text of the Prepaid Funeral Benefits Act along with Chapter 0780-5-10 of the Rules of the Tennessee Department of Commerce and Insurance consistently refer to "trusts," "trust funds," and "trustees." These statutory provisions and rules, however, do not state that general trust law principles pursuant to Title 35 do not apply to pre-need funeral trusts where their terms or the terms of the trust agreement are not inconsistent.

Reading the two acts together, the Court finds that general trust law principles codified in the Uniform Trust Code supplement the more detailed pre-need funeral trust provisions and the pre-need Trust Agreement to the extent that there is no conflict, in which case the more specific provisions of the Prepaid Funeral Trust Act and the Trust Agreement would govern.

_____

[4]     The Court notes that the Tennessee Uniform Trust Code only became effective on July 1, 2004.  The Code, however, substantially restates and rewrites existing Tennessee trust law prior to this date.  Furthermore, § 35-15-106 expressly states that the "common law of trusts and principles of equity supplement the [Code]," except to an extent modified by the Code or another state statute.  As a result, the Court finds that the Tennessee legislature when enacting the Prepaid Funeral Benefits Act was familiar with common law and equity principles relating to trusts.  References therefore to "trusts," "trustees," and "beneficiaries" will therefore be given the meaning consistent with the Tennessee common law of trusts now reflected in the Tennessee Uniform Trust Code.  See Erlenbaugh, 409 U.S. at 243.

16

The Prepaid Funeral Trust Act that was effective in 1997 and the current act do not state that a trustee is exempt from traditional trustee fiduciary duties, nor does either version prescribe remedies if the trustee's duties, including its fiduciary duties, are breached.  The limited reference to "legal remedies" states that "*in addition to other remedies*, an action of injunction may be brought and maintained by the state or any other interested party to enjoin the violation of this part." Tenn. Code Ann. § 62-5-407(a) (1997); see also Tenn. Code Ann. § 62-5-416 (2010).  Despite Defendants' contention, the Court finds it unlikely that the Tennessee legislature intended to silently waive all traditional trustee fiduciary duties and corresponding remedies for pre-paid funeral trusts.

Defendants next attempt to argue that even if Title 35 does apply, Tennessee Code Annotated § 35-3-123 excuses trustees from liability to "any beneficiary for any act performed or omitted pursuant to written directions from the person holding the power to revoke, terminate, or amend the trust" or "the person to whom the power to direct the investment or management of the account is delegated by the trustor." (Defs.' Reply at 8.)  Because Forest Hill issued written instructions to Defendant FFSB to purchase life insurance as an investment for the trusts, Defendant FFSB contends that it cannot be liable to Plaintiffs. (Id.)

Such an argument at this early stage requires the Court to determine, without any facts regarding the circumstances of the written instructions, whether Tennessee Code Annotated § 35-3-123 trumps fiduciary duties, requiring a trustee to administer the trust solely in the interests of beneficiaries, or the terms of the Trust Agreement, requiring the Trustee to exercise the "judgment and care under the circumstances then prevailing which men of prudence, discretion, and intelligence exercise in the management of their own affairs . . . ." (Trust Agreement at § 2 ¶ D.)  The Court finds that Plaintiffs' allegations that the life insurance contracts were purchased improperly without their consent – which Defendants do not deny – and depleted the trust corpus and any earnings derived from it, states a colorable claim for relief sufficient to state a cognizable injury.[5]

Specifically, the Tennessee Uniform Trust Code, in accordance with the common law of trusts and principles of equity, establishes (1) a duty to administer the trust in good faith and in accordance with its terms and purposes and interests of the beneficiaries, (2) a duty of loyalty to administer the trust solely in the interests of the

---

[5]    "[I]n the context of standing, it is the nonfrivolous claims of a party that are determinative, not whether the party can sustain those claims by proof on the merits . . . .  If the complaint . . . makes a nonfrivolous or colorable claim of injury, that the injury is due in significant part to the [defendant], and that the courts, if they rule for the complaining party, can redress the injury, no more is required to satisfy Article III."  City of St. Louis v. Dep't of Transp., 936 F.2d 1528, 1532-33 (8th Cir. 1991).

beneficiaries, and (3) a duty to administer the trust as a
prudent person exercising reasonable care, skill, and caution.
Tenn. Code Ann. §§ 35-15-801, 802, & 804.

To remedy such harms, "[b]eneficiaries . . . have standing
to bring a petition to remedy a breach of trust" against a
Trustee.  Tenn. Code Ann. § 35-15-1001 comments (citing
Restatement (Second) of Trusts § 200 (1959)); see also In re
Cannon III v. J.C. Bradford & Co., 277 F.3d 838, 854 (6th Cir.
2002) ("When a trustee commits a breach of trust, the trustee is
personally liable to the trust's beneficiaries.").  A trust
beneficiary may also pursue a cause of action against a third
party where a "third party commits an independent wrong against
the trust or participates in the trustee's breach of fiduciary
duty."  See In re Cannon, 277 F.3d at 854-855 (citing
Restatement (Second) of Trusts § 294 cmt. a; Bogert § 871 & 955
("[T]he beneficiary has two causes of action [in such a
situation], one against the trustee and another against the
third party, and should proceed by joining both in the same
action.")); see also Mertens v. Hewitt Assocs., 508 U.S. 248,
262 (1993) (recognizing that "[u]nder traditional trust law, . .
. a beneficiary could obtain damages from third-persons for
knowing participation in a trustee's breach of fiduciary
duties").

The evidence Defendants submit in support of their motion to dismiss, including the Shelton Declaration, establishes that Plaintiffs' pre-need funeral services contracts have yet to be and may never be breached.  This does not contradict Plaintiffs' assertions that Defendant FFSB breached its fiduciary duties by purchasing life insurance policies and paying sales commissions without Plaintiffs consent, or that Defendant FLIC committed an independent wrong against the trust by causing the life insurance policies to be cash surrendered.  The combination of these actions has resulted in the depletion of the trust corpus and a loss of earnings derived from it.  Defendants do not submit any evidence disputing these damages.  Based on these facts, the Court finds that Plaintiffs have established actual injuries, fairly traceable to Defendants' allegedly unlawful conduct, and likely to be redressed by a favorable court decision.

**ii. Ripeness Doctrine**

Similar to their prior arguments, Defendants contend that Plaintiffs' claims are not "ripe" for judicial review because it is uncertain if Plaintiffs' pre-need funeral services contracts will ever be breached.  The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." <u>Airline Prof'ls Ass'n of the Int'l Bhd. of Teamsters v. Airborne</u>

Inc., 332 F.3d 983, 988 (6th Cir. 2003).  Requiring plaintiffs
to bring only ripe claims helps courts avoid premature
adjudication.  Id.

    While there is overlap between ripeness and constitutional
standing, a threatened or imminent injury may satisfy standing's
injury-in-fact requirement, "yet the claim may still be unripe
if the issues are not fit for judicial review, perhaps because
future events may greatly affect the outcome of the litigation
and the cost of waiting is not particularly severe."  Id.
Determining whether a claim is ripe involves "evaluating both
the fitness of the issues for judicial decision and the hardship
to the parties of withholding court consideration.  To be ripe
for review, claims must satisfy both the fitness and the
hardship components of the inquiry."  Id. (citations omitted).

    As previously discussed, Defendants dispute that
Plaintiffs, as trust beneficiaries, suffered cognizable harm
when Defendants' actions caused losses to the trust corpus and
earnings derived from it.  Because these actions and resulting
harms have already occurred and the factual record documenting
Defendants' actions is complete, delaying judicial review is
unnecessary and costly to the swift resolution of the issues in
this case.

    For the reasons cited above and to the extent that
Plaintiffs' claims request relief for the depletion of the trust

corpus and any earnings derived thereon, the Court DENIES Defendants' Motion to Dismiss pursuant to Rule 12(b)(1).

### B. 12(b)(6) Motion

Finding that the Court has the power to adjudicate Plaintiffs claims, the Court now turns to Defendants' Rule 12(b)(6) motion.  Pursuant to Rule 12(b)(6), a defendant may move to dismiss the plaintiff's complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  Under Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corp. v. Twombly, 440 U.S. 544 (2007), a "civil complaint only survives a motion to dismiss if it 'contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  Courie v. Alcoa Wheel & Forged Prods., 577 F.3d 625, 630 (6th Cir. 2009) (quoting Iqbal, 129 S. Ct. at 1949).  The Court must "construe the complaint in the light most favorable to the plaintiff, accept all its allegations as true, and draw all reasonable inferences in favor of the plaintiff."  In re Travel Agent Comm'n Antitrust Litig., 583 F.3d 896, 902-03 (6th Cir. 2009) (citation omitted).  The Court "need not accept as true legal conclusions or unwarranted factual inferences . . . and conclusory allegations or legal conclusions masquerading as factual allegations will not suffice."  Id. at 903 (citations and quotation marks omitted).

### i. 12(b)(6) Analysis

Defendants argue that it is not plausible for the Court to infer that either defendant is liable because Plaintiffs cannot show that they have been personally damaged by Defendants' alleged misconduct. (Defs.' Mem. in Supp. of Mot. to Dismiss (D.E. 13-7) at 20.) Because a showing of damages is a material element of each claim Plaintiffs have asserted, Defendants argue that Plaintiffs have failed to state a claim upon which relief can be granted. (Id. at 20.) According to Defendants, Plaintiffs will receive "precisely what they bargained for in the form of pre-need funeral services and merchandise." (Id. at 23.)

As noted *supra*, Defendants incorrectly construe Plaintiffs' Complaint as asserting a breach of contract claim only. Plaintiffs, however, as pre-need trust beneficiaries, are the equitable title holders of the trust assets, a depletion of which states a claim for relief. See In re Cannon, 277 F.3d at 850 (citation omitted); see also In re Southmark Corp. v. Grosz, 49 F.3d 1111, 1117-18 (5th Cir. 1995) ("In a trust relationship . . . the law actually divides the bundle of rights in the property; the trustee holds legal title while the beneficiary possesses an equitable title or property interest." citing George G. Bogert & George T. Bogert, The Law of Trusts and Trustees § 17, at 216-17 (2d rev. ed. 1984)). Nothing in the

Trust Agreement, which established Defendant FFSB's role as a trustee, or the Tennessee Prepaid Funeral Benefits Act, suggests that the principles enumerated in the Tennessee Uniform Trust Code in accordance with the common law of trusts and principles of equity, should not apply to pre-need funeral trust funds.  As a result, Tennessee law permits a trust beneficiary to assert a claim against a trustee and/or a third party for a loss of trust assets.

The Verified Complaint states that there was approximately $29.5 million in assets held in trust, which included life insurance policies with a face value of $22 million at the time Defendant FFSB was replaced as Trustee by Defendant Community Trust.  (Defs.' Mem. in Supp. of Mot. to Dismiss, Ex. 3(a)(4) (D.E. 13-3) ¶ 12.)  The cash surrender of the life insurance policies on 13,465 pre-need funeral policies resulted in a loss of $9,547,082 in trust assets.  (Id. ¶ 14.)  Viewing these facts in the light most favorable to Plaintiffs and accepting all of the allegations as true, Plaintiffs' have sufficiently alleged damages resulting from Defendants' actions in the form of the depletion of the trust corpus and the loss of earnings derived from it.  To the extent that Plaintiffs seek relief for these damages, the Complaint states valid claims for relief.  The Court therefore DENIES Defendants' Motion to Dismiss pursuant to Rule 12(b)(6).

**III. <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Dismiss (D.E. 13) is DENIED.

SO ORDERED this 1st day of July, 2010.

<u>/s/ JON PHIPPS McCALLA</u>
CHIEF UNITED STATES DISTRICT JUDGE